UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY C. BROWN,

    Plaintiff,

v.                                                              Case No. 8:10-cv-2339-T-35AEP

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplement Security Income ("SSI").[1] As the decision of the Commissioner of Social Security is supported by substantial evidence and employed proper legal standards, I recommend that the decision be affirmed.

**I.**

**1.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI alleging a disability onset date of February 1, 2008. (Tr. 130-33, 134-41.) The Commissioner denied his claims both initially and upon reconsideration. (Tr. 95-113.) Plaintiff then requested an administrative

---

[1] This matter comes before the undersigned upon referral from the District Judge for issuance of a Report and Recommendation. (Dkt. No. 20); *see* Local Rules 3.05(c)(1)(B) and 6.01(c)(21).

hearing. (Tr. 114-15.) Per his request, the ALJ held a hearing at which Plaintiff appeared with counsel and testified. (Tr. 25-66.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits. (Tr. 6-24). Plaintiff then timely filed a complaint with this Court. (Dkt. No. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## 2. Factual Background and the ALJ's Decision

Plaintiff, who was born on March 24, 1962, has a high school education. (Tr. 18, Finding 7; Tr. 30.) His past work experience includes owning and operating a retail store and a car wash as well as work as a grocery clerk and a produce manager. (Tr. 18, Finding 7.) He alleges disability due to a back injury. (Tr. 153.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar sprain, back pain, and depression. (Tr. 12, Finding 3.) Notwithstanding the noted impairments, the ALJ determined Plaintiff retained a residual functional capacity ("RFC") to perform light work with certain limitations (Tr. 13, Finding 5). More specifically, the ALJ determined Plaintiff could perform light work except that he required an occasional limitation for bending, stooping, crouching, and kneeling but was capable of performing routine tasks where occasional lapses in concentration are acceptable and where there is a sit/stand option. (*Id*.) Considering Plaintiff's noted impairments and RFC, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 18-19, Finding 7.)

After determining Plaintiff could not perform his past relevant work, the ALJ relied on the assessment of a vocational expert ("VE") to determine the extent to which Plaintiff's

2

limitations eroded the unskilled light occupational base. (Tr. 19.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small-products assembler, merchandise marker, and line inspector. (Tr. 19-20, Finding 11; Tr. 59-66.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 20, Finding 12.)

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial

3

gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient

4

reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff contends that the ALJ erred by (1) failing to find that Plaintiff's impairments met Section 12.04 and 1.04 of the Listing of Impairments and (2) failing to give the opinions of Plaintiff's treating physicians controlling weight. For the reasons discussed below, the Court finds the ALJ applied the correct legal standards and the decision is supported by substantial evidence.

### 1. **Listing of Impairments**

Plaintiff first argues the ALJ erred by failing to find that Plaintiff's impairments met or equaled a listed impairment. Indeed, in his decision, the ALJ explicitly found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In reaching that conclusion, the ALJ considered both musculoskeletal disorders and mental disorders, found that the medical evidence did not sufficiently support the conclusion that Plaintiff's impairments are of Listing level severity, and noted that the consultative medical examiners reached the same conclusion. (Tr. 12-13.) Plaintiff contends the ALJ should have found that Plaintiff had a mental impairment

which met or equaled Listing 12.04 regarding affective disorders as well as a physical impairment which met or equaled Listing 1.04 regarding disorders of the spine.

The Listing of Impairments describes, for each of the major body systems, impairments considered severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). The Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary and thus require an impairment preventing an adult from performing *any* gainful activity rather than just substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To show that an impairment meets a Listing, the impairment must meet all of the specified medical criteria. *Id.* at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* A diagnosis alone cannot meet the criteria required to establish an impairment meets a Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."). To "meet" a Listing, therefore, a claimant must have a diagnosis included in the Listings as well as medical reports documenting that the condition meets both the specific criteria of the Listings and the duration requirement. *Wilson*, 284 F.3d at 1224; *see* 20 C.F.R. §§ 404.1525, 416.925. To medically "equal" a Listing, on the other hand, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Essentially, if a claimant has an impairment, or combination of impairments, that is not described in the Listings, the Commissioner compares the claimant's medical findings with those for closely analogous

listed impairments to determine if the findings related to the claimant's medical impairments are at least of equal significance to those of a listed impairment. 20 C.F.R. §§ 404.1526(b)(2)-(3), 416.926(b)(2)-(3). Under the equivalence analysis, however, a claimant cannot qualify for benefits by merely "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (citation omitted).

### a. Listing 12.04

As noted previously, Plaintiff argues that the ALJ erred by not finding Plaintiff's mental impairment met or equaled Listing 12.04 regarding affective disorders. Listing 12.04 provides, in part:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, of when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration;
>
> Or
>
> C. Medically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.04. As a review of the evidence indicates, Plaintiff's mental impairment failed to meet or equal the requirements of sections A and B or C. *See id.*

On June 3, 2008, Plaintiff presented to Mental Health Care, Inc. ("MHC") complaining of depression, lack of motivation, frequent crying, seeing shadows, thinking someone was following him, being easily angered and irritable, having poor attention and concentration, and having anxiety. (Tr. 282.) At that time, Plaintiff's mood was depressed and his affect was flat, but his physical appearance, grooming, and hygiene were good; his eye contact was good; he was cooperative; his speech was normal with relevant and coherent content; he was oriented to person, place, time, and situation; he was attentive; he had no memory problems, hallucinations, or delusions; and his insight and judgment were fair. (Tr. 289-90.) Kim Giunta, LMHC,

9

provided a provisional diagnosis of major depressive disorder, single episode severe with psychotic features and cannabis abuse and assigned a Global Assessment of Functioning ("GAF") score of 45. (Tr. 291.)

In early July 2008, a consultative medical examiner submitted a Psychiatric Review Technique. (Tr. 263-76.) The consultative medical examiner found Plaintiff suffered from depression, which she classified as a non-severe affective disorder. (Tr. 263, 266.) Accordingly, she found Plaintiff had only mild difficulties maintaining social functioning and mild difficulties maintaining concentration, persistence, and pace and found Plaintiff had no restrictions of daily activities and no episodes of decompensation. (Tr. 273.)

A couple weeks later, Plaintiff met with Dr. Hany Botros for a psychiatric evaluation. (Tr. 280-81.) Plaintiff complained of depressed mood, poor focusing, poor concentration, decreased interest in daily activities, decreased memory, fatigue, poor motivation, decreased appetite, getting angry and agitated easily together with frequent anxiety attacks, self isolation, decreased sleep at night, feeling hopeless and helpless with crying spells (especially about not being able to find a job), and hearing voices. (Tr. 279.) He stated he had never taken any psychotropic medication or antidepressants, denied previous suicide attempts, denied previous admissions to a psychiatric hospital, and denied history of any previous psychiatric problems. (*Id.*) Upon examination, Plaintiff was calm, quiet, cooperative, alert, oriented x3, had normal speech, had logical though process, had no delusions, had a depressed mood, denied auditory or visual hallucinations, and denied suicidal or homicidal ideation. (Tr. 280.) Dr. Botros diagnosed Plaintiff with major depressive disorder severe with psychotic features, cannabis abuse, and

consider drug-induced psychosis and assigned Plaintiff a GAF of 48. (Tr. 281.) Plaintiff received some medication, counseling regarding his history of drug abuse, and directed to return for a follow-up visit in four weeks. (*Id.*) Plaintiff returned for a medication review approximately one month later at which time Dr. Botros adjusted Plaintiff's medication and directed Plaintiff to return in a month for a follow-up visit. (Tr. 278.)

The medical evidence reflects that Plaintiff met with a mental health physician or counselor on only three occasions and received conservative treatment through medication. Further, the evidence shows he had no difficulties in activities of daily living and no episodes of decompensation and only mild difficulties maintaining social functioning and mild difficulties maintaining concentration, persistence, and pace. As such, Plaintiff's mental impairment did not meet the B criteria. Furthermore, Plaintiff did not even meet the duration requirement much less the severity requirements of the C criteria, so the ALJ did not need to consider that criteria. The one-time assignment of a GAF score of 48 by Dr. Botros does nothing to bolster Plaintiff's position. Indeed, a GAF score indicates the clinician's assessment of the individual's overall functioning but does not itself reveal a particular type of limitation and does not constitute an assessment of a claimant's ability to work. *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978 *3 (M.D. Fla. May 8, 2008). Given the foregoing, the ALJ properly found that Plaintiff's mental impairment did not meet or equal Listing 12.04 and substantial evidence supports his decision.

### b.     Listing 1.04

Listing 1.04 relates to disorders of the spine and provides:

> 1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, App. 1, § 1.04. As the medical evidence indicates, Plaintiff does not have a medical impairment which either met or equaled Listing 1.04.

Plaintiff presented to Tampa General Hospital on December 24, 2007, with back pain and was diagnosed with back strain and given prescriptions for a limited amount of pain medication. (Tr. 205-12.) A radiological report submitted the same day indicated no significant degenerative change in Plaintiff's back and essentially an unremarkable examination. (Tr. 214.) About a week later, Plaintiff went to the Doctor's Walk-In Clinic with back and lumbar spine pain. (Tr. 237-42.) Examination of his back revealed no abnormalities; his gait was normal; muscle strength was 5/5 for all groups tested; straight-leg testing was negative bilaterally; lumbar

range of motion was normal except decreased flexion without pain and decreased extension without pain; pain was elicited on paraspinous percussion in the lower back; coordination was normal; deep tendon reflexes were normal; and no sensory defects were noted. (Tr. 238.) The doctor recommended alternating heat and ice to the area, maintaining range of motion, and not engaging in heavy lifting or sporting activities as well as restricted his work status to no climbing ladders and no pushing, pulling, or lifting over ten pounds. (*Id.*) He returned to the Doctor's Walk-In Clinic on January 6, 2008, complaining of moderate and constant back and lumbar pain that was not getting better. (Tr. 232.) Examination revealed no midline defects; no kyphosis or scoliosis noted; muscle spasms; and the lumbar range of motion was normal except for decreased flexion with pain, decreased extension with pain, decreased left side bend with pain, normal right side bend with pain, and decreased right rotation with pain. (Tr. 233.) Plaintiff received a therapeutic injection, was directed to physical therapy, and had an MRI ordered. (*Id.*)

Following that, on January 17, 2008, Plaintiff also visited the Doctor's Walk-In Clinic complaining of mild back and lumbar spine aches. (Tr. 227.) Plaintiff noted his pain had decreased, his stiffness had not changed, and he had difficulty walking and standing but he had no numbness or tingling into the lower extremities. (*Id.*) He stated the prescriptions helped initially but no longer relieved the aches and pains. (*Id.*) During that examination, Plaintiff's range of motion was normal except for decreased flexion with pain; he had normal extension without pain; normal left and right side bends without pain; normal left and right rotation without pain; and his muscle strength was 5/5 for all muscle groups tested. (Tr. 228.) Plaintiff was directed to apply heat and warm compresses, do some light range-of-motion exercises, and take

13

over-the-counter medication for the pain. (*Id.*) An MRI conducted the following day revealed Plaintiff had a moderate sized central disc extrusion at L4-5 and a small central disc extrusion at L5-S1. (Tr. 220-21.)

Plaintiff again reported to the Doctor's Walk-In Clinic on January 22, 2008, complaining of constant back and lumbar spine aches and pain which had improved slightly since his last visit. (Tr. 215.) Upon examination, he had only mild paralumbar tenderness and spasm, normal deep tendon reflexes, negative straight leg raising, and full range of motion in all planes but with pain. (Tr. 218.) Plaintiff was instructed to return to the clinic or emergency room if the symptoms worsened, persisted, or changed and told to use moist heat to the affected area. (*Id.*) For purposes of his worker's compensation status report, Plaintiff was permitted to work with the following restrictions: no bending, stooping, squatting, and kneeling; no climbing ladders and stairs; no prolonged/limited standing and walking; no pushing, pulling lifting over five pounds; and a requirement to be sitting half the time and standing half the time. (Tr. 217-18.)

In February 2008, Plaintiff met with Dr. Stuart Goldsmith, an orthopedic surgeon. (Tr. 243-46.) Upon examination, Dr. Goldsmith noted the following: marked restriction of range of motion, 25% flexion, approximately 25% hypertension; lateral bending causes severe pain; straight leg raising tenderness identified bilaterally at 50 degrees; reflexes of the lower extremities were completely normal; no signs of sensory deficits; no signs of atrophy; and variscosities identified in medial thigh. (Tr. 245.) The X-rays of Plaintiff's lumbar spine demonstrated no signs of fracture, no lytic defects, and no signs of spondylolysis or spondylolisthesis. (*Id.*) Dr. Goldsmith diagnosed Plaintiff with a lumbosacral sprain and strain

14

and questionable herniated nucleus pulposus. (*Id.*) Accordingly, Dr. Goldsmith recommended a break from work and treatment with pain medication, muscle relaxants, and physical therapy. (Tr. 246.) During a follow-up visit, Plaintiff's range of motion had improved a little yet he still experienced problems in the lumbosacral region. (Tr. 243.) Dr. Goldsmith recommended physical therapy to get Plaintiff back to work. (*Id.*)

Plaintiff met with Dr. Lucy Love, a neurosurgeon, in June 2008. (Tr. 292-97.) Dr. Love found Plaintiff had slight tenderness in his lumbar spine; was able to flex approximately 30 degrees, hyperextend 10 degrees and laterally flex 20 degrees; had mildly straight leg raising on the left side at approximately 60 degrees; had no sciatic notch tenderness; all muscle groups were 5/5 with good rapid successive movements and no drifts; had slight decrease to pinprick over the entire left leg; and had gait that was somewhat antalgic favoring the left leg. (Tr. 294.) Dr. Love's clinical impression was that Plaintiff had persistent back pain and left leg pain and, although the January MRI did not reveal a surgical problem at that time, Plaintiff failed to improve with the conservative treatment of physical therapy. (Tr. 295.) She recommended Plaintiff have another MRI and she see him following that. (*Id.*) A MRI was subsequently conducted and demonstrated that Plaintiff had a moderated sized central disc extrusion at L4-5 without canal stenosis, which was unchanged from the prior study consistent with a chronic process, and the previously described small disc extrusion at L5-S1 was not appreciated on that examination. (Tr. 296.)

After reviewing the medical evidence of record, two consultative medical examiners submitted Physical Residual Functional Capacity Assessments. (Tr. 247-62.) The first

15

assessment, submitted in February 2008 after Plaintiff's follow up with Dr. Goldsmith, indicates only slight limitations due to Plaintiff's back impairment; namely, Plaintiff could only occasionally use ladders, ropes or scaffolds and needed to avoid concentrated exposure to hazards such as machinery and heights. (Tr. 247-54.) The second assessment, submitted in June 2008 after Plaintiff's appointment with Dr. Love, found Plaintiff had postural limitations which limited him to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 257.)

Given the foregoing, the ALJ appropriately found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled Listing 1.04. No physician diagnosed Plaintiff with a medical impairment that met or was at least equal in severity to all of the specified medical criteria of Listing 1.04. Dr. Goldsmith's diagnosis of a *questionable* nucleus pulposus does not elevate Plaintiff's physical impairment to the level required by Listing 1.04. Further, even if Plaintiff could be considered to have a nucleus pulposus, the medical evidence does not demonstrate any of Listing 1.04A, B, or C criteria. Accordingly, the ALJ properly found Plaintiff's physical impairment did not meet or equal Listing 1.04 and substantial evidence supports his decision.

### 2. **Weight of Medical Opinion**

Plaintiff additionally argues that the ALJ failed to afford proper weight to the opinion of Dr. Botros [2] In assessing the medical evidence, the ALJ must state with particularity the

---

[2] Plaintiff also contends the ALJ did not afford the opinion of Dr. Shodhan A. Patel proper weight. Review of the record does not reveal any observations, notes, diagnoses or other information from Dr. Patel and Plaintiff does not point to any. Instead, Plaintiff attached to his Memorandum of Law the Florida Department of Revenue's Statement of Health Care

weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Here, the record reflects that Plaintiff met with Dr. Botros on two occasions. During the first meeting, Dr. Botros assigned Plaintiff a GAF score of 48. Plaintiff contends the ALJ erred by failing to find that the GAF score constituted restrictions placed on Plaintiff by a treating physician. First, the fact that Plaintiff only met with Dr. Botros on two occasions belies Plaintiff's assertion that Dr. Botros was a treating physician. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (each stating that more weight is given to treating sources because those sources

---

Provider for Dr. Patel dated October 25, 2010 (Exhibit B). For the Court to consider the new evidence, which is only relevant in the context of remand under sentence six, a "claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Here, the evidence submitted by Plaintiff is cumulative. Further, the evidence is not material and would not change the administrative result as it is an opinion on whether Plaintiff is disabled and able to return to work. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Kelly v. Comm'r of Soc. Sec.*, 401 Fed. App'x 403, 407 (11th Cir. 2010) (directing that a physician's opinion on a dispositive issue reserved to the Commissioner, such as whether the claimant is disabled or unable to work, does not constitute a medical opinion and thus does not receive any special significance).

are the most likely to provide a detailed, longitudinal picture of the claimant's medical impairments). Notwithstanding, and as explained above, an opinion concerning a GAF score, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations. *Ward*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978 at *3. The Commissioner has in fact declined to endorse the GAF scale for use in the Social Security disability analysis and has instead indicated GAF scores have no direct correlation to the severity requirements of the listings for mental disorders. *Wind v. Barnhart*, 133 Fed. App'x 684, 692 n. 5 (11th Cir. 2005). The ALJ is not, therefore, required to determine the extent of an individual's disability based entirely upon his GAF score. *Newsome ex rel. Bell v. Barnhart*, 444 F. Supp. 2d 1195 (M.D. Ala. 2006). Even so, the ALJ considered the opinion of Dr. Botros and gave it great weight as it was consistent with the medical evidence of record. (Tr. 18.) In doing so, the ALJ appropriately considered Dr. Botros's findings and notes and those of his staff, all of which indicated Plaintiff's limitations were not as restricting as he alleged and, further, that Plaintiff had no severe mental impairments. (Tr. 17-18.) The ALJ's findings as to Dr. Botros's opinion were thus supported by substantial evidence.

## IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and employed proper legal standards. Accordingly, it is hereby **RECOMMENDED** that the decision be **AFFIRMED**.

**IT IS SO REPORTED** at Tampa, Florida on this 16th day of February, 2012.

ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Mary S. Scriven

Counsel of Record